IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| ATTALA COUNTY, MISSISSIPPI,<br>BRANCH OF THE NAACP, et al. | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 4:19-CV-167-DMB-JMV |
| DOUG EVANS, in his official capacity | DEFENDANT |

**MEMORANDUM REPLY IN SUPPORT OF MOTION TO DISMISS, OR TO ABSTAIN**

Plaintiffs lack Article III standing and their requested equitable relief is incongruent with *O'Shea v. Littleton*, 414 U.S. 414 (1974). Plaintiffs do not allege a concrete and particularized injury, nor that the injury is actual or imminent. Instead, plaintiffs argue their injury is predicated on the fact that they meet the qualifications to serve as jurors and stand ready and able to do so. This does not satisfy Article III.

Through rhetorical sleight of hand, plaintiffs' oppositional response suggests their equitable relief is straightforward, would not interrupt state court criminal proceedings, and not implicate *O'Shea*. It is inescapable, however, that the relief sought <u>will</u> permanently entangle this Court in future review of state criminal court *Batson* challenges. The relief sought <u>will</u> also undoubtedly require this Court to reexamine a state court's *Batson* rulings if class members return to this Court, as they suggest they would, to enforce an injunction that Mr. Evans exercised peremptory challenges based on race. ECF No. 13, p. 27. Regardless of how the requested relief is fashioned, the result is incompatible with *O'Shea*.

**I.      Plaintiffs Lack a "Concrete" and "Particularized" Injury**

Plaintiffs rely primarily on a trio of cases to support their alleged injury – *Ciudadanos Unidos De San Juan v. Hildago Cty. Grand Jury Comm'rs*, 622 F.2d (5th Cir. 1980),[1] *Carter v. Jury Comm'n of*

---

[1] A judge appointed three to five people to serve as jury commissioners. 622 F.2d at 811. The commissioners chose between 15 and 20 people to be summoned as grand jurors. *Id.* The statute did not specify how commissioners were to select names for the jury list nor were they required to use any particular source for names to be put on the list.

*Green Cty*, 396 U.S. 320 (1970),[2] and *Turner v. Foche*, 396 U.S. 346 (1970).[3] ECF No. 13, pp. 5-8.[4] These cases are readily distinguishable "because they involved challenges to the alleged *systematic and unilateral exclusion of racial groups from jury rolls* by officials charged with the administration of the state's jury-selection laws." *Hall v. Valeska*, 509 F. App'x 834, 836 (11th Cir. 2012) (emphasis original). There is no challenge to the jury roll system in this case.

The *Hall* plaintiffs also challenged "the discretionary use of peremptory strikes during judicial proceedings – strikes which may be objected to, ruled on contemporaneously, and subjected to appellate review." *Id.* Moreover, as *Ciudadanos* observed, the Texas jury selection system "relie[d] 'at no stage on random choice or the laws of chance." 622 F.2d at 823 (citation omitted). Mississippi's statutory jury selection system, writ large, encompasses a number of random choices and laws of chance prior to the point at which a prospective juror could be stricken by a peremptory challenge. ECF No. 9, pp. 12-14.

While plaintiffs rely on *Carter*, the Court in *Powers v. Ohio* said "[w]e have held that individual jurors subjected to racial discrimination have the legal right to bring suit on their own behalf." 494 U.S. 400, 414 (1991) (citing *Carter*, 396 U.S. at 329-330). *Powers* notably distinguished *Carter* as to declaratory or injunctive claims stating "[u]nlike a challenge to systemic practices of the jury clerk and

---

*Id.* Plaintiffs were Mexican-Americans, women, people ages 18-28, and persons below the poverty level. *Id.* at 812. No members of these groups <u>had been called</u> for jury service in the prior ten years. *Id.* at 818.

[2] In *Carter,* the Governor appointed a three-member jury commission by county. The commission prepared a jury role with all "qualified, nonexempt citizens . . . who [were] 'generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgement.'" 396 U.S. at 322-23. New names deemed acceptable were added to the roll. *Id.* at 326. The clerk did not obtain the names of all eligible jurors. *Id.* at 324. The list "produced a small group of individually selected or recommended names for consideration." *Id.* at 327.

[3] In *Turner*, the statutory scheme provided that the county board of education consisted of five freeholders. It was selected by the grand jury drawn from a jury list selected by the six-member county commission. The commissioners were appointed by the judge of the state superior court for the county where the board was located. *Id.* at 534. No name was added to the list unless he was personally known to at least one of the jury commissioners. *Id.* at 535.

[4] Plaintiffs also cite *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1992) in which the Fifth Circuit held a prospective juror lacked standing for prospective relief because the injury was speculative. *Id.* at 1286.

commissioners such as we considered in *Carter,* it would be difficult for an individual juror to show the likelihood that discrimination at the voir dire stage will recur." 499 U.S. at 414. Unlike *Carter, Ciudadanos,* and *Turner*, plaintiffs do not allege they are excluded from jury rolls. Plaintiffs acknowledge that jury summons lists are compiled from the database of the county's registered voters maintained by the Mississippi Secretary of State's Office. ECF No. 13, pp. 5-7. The Circuit Clerk then issues the summonses to prospective jurors. *Id*. From that point, there are still a number of independent factors that impact whether a person sits on a criminal jury having nothing to do with a peremptory strike.

Plaintiffs also incorrectly analogize their alleged injury to cases invalidating public contract set-aside programs. ECF No. 13, pp. 7-8 (citing *Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656 (1993) and *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989)). According to plaintiffs, "the injury is the denial of the 'right to be considered for public service without the burden of invidiously discriminatory disqualification.'" *Id.* at 7 (quoting *Turner*, 396 U.S. at 362). Plaintiffs argue they need only show they are "able and ready" to particulate in the jury selection process. *Id.* at 8. *Jacksonville* and *Croson* do not advance the plaintiffs alleged injury. Like the jury selection systems that systematically excluded racial groups from jury rolls at the outset, the set-aside programs in *Jacksonville* and *Croson* similarly excluded a class of contractors from bidding on a fixed percentage of city projects – *ab initio*.

The alleged injury in those cases was the inability to bid on a percentage of projects. As noted in *Croson*, "past discrimination in a particular industry cannot justify the use of an unyielding racial quota." 488 U.S. at 498. Neither *Jacksonville* nor *Croson* is analogous to the circumstances impacting prospective jury service in this case. Plaintiffs' injury theory is predicated on the fact they are eligible for jury service and stand ready and able to serve in the absence of anything further. This is a "hypothetical" and "conjectural" injury. *Stringer v. Whitley*, 942 F.2d 715, 721 (5th Cir. 2019).

3

**II. Plaintiffs Alleged Future Injury is not "Certainly Impending"**

In an attempt to distinguish *Clapper v. Amnesty Int'l,* 588 U.S. 398 (2013), plaintiffs say *Turner v. Foche* "confirms that a court may reach the merits of a race discrimination claim challenging a multi-step selection system. . .." ECF No. 13, p. 13. They maintain the "harm is not dependent on a series of events leading to [p]laintiffs necessarily being struck . . . [but] is dependent on the 'imposition of a barrier' between them and a fair jury selection process . . .." *Id* at 14. This is incorrect for several reasons. First, as plaintiffs acknowledge, *Turner* did not address standing. *Id.* at 15, n.7. It is well-settled that courts are not "bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio." *Kershaw v. Shalala*, 9 F.3d 11, 13, n.3 (5th Cir. 1993) (citing *U.S. v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952)).

Second, plaintiffs incorrectly equate the statutory mechanisms that led to African-Americans being excluded from a school board in *Turner* with the possibility they might be summoned as prospective jurors in the future. In *Turner*, the "board of education consisted entirely of white people; had been selected by a predominately white grand jury, which in turn had been selected by the jury commissioners, all of whom were white." *Id.* at 350. Members of the jury, on which white people were overrepresented "chose only white people as members of the board of education pursuant to the Georgia constitutional and statutory provisions governing school-board selection." *Id.* at 535. Like *Carter* and *Ciudadanos*, individuals were excluded, or drastically under included, on the list of potential jurors.

Finally, the first act required for plaintiffs to come in contact with the jury system in this case is random – that they receive a jury summons. In *Turner*, potential jurors were not added to the list, for instance, unless they were personally known to at least one of the jury commissioners. *Id.* at 535. Plaintiffs do not allege they are excluded from the data base from which the Circuit Clerk draws prospective jurors.

Plaintiffs also argue incorrectly "the instant case is akin to [*Ciudadanos*], where plaintiffs alleged 'an injury that turns on a single contingency: that the [defendants] will act exactly as they have for the

4

past ten years." ECF No. 13, p. 14. However, the *Ciudadanos* Court found the Texas jury summons system did not rely, <u>at any stage</u>, on random choice or laws of chance. 622 F.2d at 823. The statutory jury process in Mississippi involves a number of random and independent factors. ECF No. 9 pp. 12-14.

Finally, plaintiffs say their "allegations support the inference that there is "at least a 'substantial risk' that the injury will occur." ECF No. 13, p. 10. However, a future injury must also be "imminent, not conjectural or hypothetical." *Stringer,* 942 F.2d at 721. And the injury must be "certainly impending." *Clapper*, 588 U.S. at 409 ("[T]o the extent that the 'substantial risk' standard is relevant and is distinct from the 'clearly impending' requirement, respondents fall short of even that standard . . ."); *Lujan v. Defs of Wildlife*, 504 U.S. 555, 564, n. 2 (Future injuries must "proceed with a high degree of immediacy. . ."). Finally, the "threatened injury must be certainly impending to constitute injury in fact . . . ." 588 U.S. at 409 (citations and internal quotations omitted). Plaintiffs do not address these required elements.

In the end, plaintiffs lack a "certainly impending" threatened injury. Plaintiffs indisputably have no cognizable claim that they have been subjected personally to discriminatory treatment in the jury selection process. Only Plaintiff Young alleges she was summoned for jury duty sixteen years ago. ECF No. 1, ¶ 19. Like *Clapper*, plaintiffs' theory of standing relies on a highly attenuated chain of possibilities and does not satisfy the requirement that the injury is "certainly impending." 588 U.S. at 410.

**III. Abstention is Proper**

Plaintiffs maintain abstention is improper because the "injunction in *O'Shea* is different than the injunction requested here." ECF No. 13, p. 24. They argue that in *Pipkins v. Stewart*, 2019 WL 1442218 (W.D. La. April 1, 2019) and *Hall v. Valeska*, 849 F. Supp.2d 1332, 1338 (M.D. Ala.), the courts got abstention wrong under the same circumstances, although the Eleventh Circuit in *Hall* affirmed the district court. 509 F. App'x 834. Like Plaintiffs here, the *Hall* plaintiffs said they were not seeking to enjoin current or future criminal proceedings. The District Court held "the relief sought by the [p]laintiffs could also allow <u>any</u> member of the class subjected to the peremptory strike to promptly seek a contempt

5

citation in federal court, so that resort to the federal courts by beneficiaries of the injunction to enforce the injunction would interrupt that process." *Hall*, 849 F. Supp.2d at 1338 (emphasis supplied).

Clearly cognizant of their *O'Shea* dilemma, Plaintiffs maintain that, assuming the Court granted their injunction, they will not "interrupt any pending criminal prosecutions." ECF No. 13, p. 23. As non-parties to the state court proceeding they argue if "Mr. Evans strikes them with a peremptory challenge, they will leave the courtroom, and the trial will proceed uninterrupted." *Id.*, p. 26.[5] However, any member of a class under an injunction order from this Court could seek immediate relief. "Once issued, an injunction may be enforced." *Hutto v. Finney*, 437 U.S. 678, 690-91 (1978). Plaintiffs cannot say the state court proceedings would not be interrupted by a dismissed juror seeking prompt relief from this Court.[6]

Plaintiffs argue *Ciudadanos* prohibits abstention pointing to footnote 49. ECF No. 13, pp. 21-22. *Ciudadanos* distinguished *O'Shea* because "appellants' compliance with the district court's order can be fully accomplished and evaluated before any actual proceedings are commenced before even the grand jury's consideration of any indictments." 622 F.2d at n.49. That is not the case here. The relief could be implicated either when the juror is excluded, or at a later date, which would entangle this Court in review of a prior state court *Batson* challenge. Either way, this is distinguishable from *Ciudadanos*.

Although *Powers* held a prospective juror does not have the right to sit on a particular petit jury, the impact of a juror seeking relief under a federal injunction during or after a state criminal trial presents significant federalism concerns. It is not simply that a dismissed juror could interfere immediately in an

---

[5] The Eleventh Circuit said "[e]ven if that proposition is true, enforcement of the injunction might – as Plaintiffs themselves suggest – involve holding Valeska in contempt, which would again raise concerns under *O'Shea* and *Younger*." *Hall*, 509 App'x at 836 (citing *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992) ("[I]f, at the end of protracted litigation, a compliance problem arose which would force abstention on the same ground that existed prior to trial."). "**We are also unpersuaded by Plaintiffs' argument that abstention is inappropriate where no pending state proceeding exists**. *Id.* (citation omitted) (emphasis supplied).

[6] In fact, plaintiffs state "even if a [p]laintiff does seek relief in federal court, by the time they bring the issue to the Court's attention, jury selection would almost surely be finished, and the Court would not be in a position to interrupt it." ECF No. 13, p. 26, n.13. Plaintiffs concede its possible a dismissed juror may seek immediate relief in this Court.

ongoing state criminal proceeding, but also the impact a federal injunction of this nature would have upon the state criminal court proceedings.

In *Pipkins*, the District Court recognized "[w]ere the Court to adjudicate the claim, it would then be intervening in a state court criminal proceeding. If the Court found in favor of the stricken African-American prospective juror, it would create an avenue for collateral attack on the validity of the state court verdict." *Pipkins*, 2019 WL 2592634 (W.D. La June 20, 2019).[7] "If even a small fraction of the African-American prospective jurors stricken by a District Attorney's peremptory chose to mount a challenge, the Court could easily find itself intervening in dozens of state court criminal proceedings. This type of ongoing enforcement of a permanent injunction greatly offends the principles of comity, federalism, and equitable restraint underlying *O'Shea*." *Id.* at *3.

Finally, plaintiffs argue they "have not sought to enjoin individual discriminatory decisions by Mr. Evans . . . [but] have requested an injunction that halts his policy, custom, or usage of discrimination against Black Jurors." ECF No. 13, p. 26. While this appears to be a distinction without a real difference, it is inescapable this Court would have to review peremptory challenges to ascertain if a prospective juror was, in fact, stricken due to race. Further, if a potential juror is dismissed after a *Batson* challenge and seeks relief under an injunction order, this Court would have to review the individual circumstances of why that juror was dismissed and whether the decision was based on race to determine if the dismissal of the prospective juror constituted a violation of an injunction.[8]

As in *Pipkins*, plaintiffs try to avoid triggering *O'Shea* by suggesting that they would not interfere with the state court proceeding, but instead, "file a motion with this Court seeking relief . . ." including

---

[7] Plaintiffs moved to amend their complaint following dismissal of the equitable claims based on abstention. In denying the motion, the Court pointed out "[i]n the present motion, Plaintiffs seek to avoid triggering *O'Shea* abstention by narrowing the scope of their requested relief." *Id.* at *1.

[8] A "trial judge's findings in the context under consideration here largely turn on evaluation of credibility; a reviewing court ordinarily should give those findings great deference." *Batson v. Kentucky*, 476 U.S. 79, 98, n. 21.

"censure, contempt, or some other graduated sanction against Mr. Evans." ECF No. 13, p. 27. Plaintiffs go so far as to proffer that "[i]f this Court is concerned about the comity concerns that stem from an interruption of state prosecutions, it can address that concern in full just by deciding it will not order relief that will interrupt state proceedings." *Id.* In the end, what plaintiffs appear to seek is an injunction that Mr. Evans follow the law. "A general injunction which in essence orders a defendant to obey the law is not permitted." *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981).

### IV. Adequate Remedy

Plaintiffs also argue abstention is improper because they lack an adequate remedy at law. ECF No. 13, p. 28. *Carter* recognized <u>dismissed jurors</u>, in the appropriate circumstances, "have the legal right to bring suit on their own behalf." 396 U.S. at 329-330 (emphasis supplied). "Equitable remedies are inappropriate 'when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Google, Inc. v. Hood,* 822 F.3d 212, 222 (5th Cir. 2016) (citation omitted). "[I]ndividual jurors subjected to racial exclusion have the legal right to bring suit on their own behalf." 499 U.S. at 414. While *Powers* noted "these challenges are rare," *id.*, it does not follow that a dismissed juror could not maintain such an action. While the allegations in this case do not support standing plaintiffs have an adequate remedy at law and abstention is proper.

### **CONCLUSION**

For these reasons and those previously set forth in his opening memorandum, Doug Evans, in his official capacity, respectfully requests that the Court dismiss the Complaint with prejudice.[9]

This the 14th day of February, 2020.

          Respectfully submitted,

          DOUG EVANS, in his official capacity as the District
          Attorney for the Fifth Circuit Court District

---

[9] Mr. Evans stands on the arguments in his opening brief on ripeness and class standing. ECF No. 9, pp. 18-19.

|  |  |  |
|---|---|---|
| BY: | | LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI |
| BY: | | /s/ *Douglas T. Miracle* <br> DOUGLAS T. MIRACLE, MSB # 9648 <br> SPECIAL ASSISTANT ATTORNEY GENERAL |

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-5654
dmira@ago.state.ms.us

### **CERTIFICATE OF SERVICE**

I, Douglas T. Miracle, Special Assistant Attorney General for the State of Mississippi, do hereby certify that on this date I electronically filed the foregoing document with the Clerk of this Court using the ECF system which transmitted a copy to all counsel of record.

This the 14th day of February, 2020.

/s/ *Douglas T. Miracle*
Douglas T. Miracle