**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**ATTALA COUNTY, MISSISSIPPI,**                                             **PLAINTIFFS**
**BRANCH OF THE NAACP; et al.**

**V.**                                               **NO. 4:19-CV-167-DMB-JMV**

**DOUG EVANS, in his official capacity**
**as District Attorney of the Fifth Circuit**
**Court District of Mississippi**                                  **DEFENDANT**

## ORDER

Since 1992, Doug Evans has served as the district attorney of Mississippi's fifth circuit court district. The plaintiffs in this case—four African American individuals qualified to serve as jurors in that district, and Attala County's branch of the NAACP—filed a class action complaint alleging that Evans and his office have over the years engaged in a discriminatory practice of using preemptory challenges to strike prospective black jurors from jury service. The plaintiffs seek a declaration that such practice violates their Fourteenth Amendment rights, and a permanent injunction prohibiting such practice in the future. Evans has moved to dismiss the complaint on grounds that the plaintiffs lack standing, the claims are not ripe, and this Court should abstain from adjudicating the plaintiffs' claims. Because the plaintiffs have other avenues of relief available in state court and because the relief the plaintiffs request would likely interfere with criminal proceedings in Mississippi's fifth circuit court district, the abstention principles announced in the United States Supreme Court's opinion in *O'Shea v. Littleton* compel abstention in this case.

**I**
**Procedural History**

On November 18, 2019, the Attala County, Mississippi, branch of the National Association for the Advancement of Colored People, and four individual plaintiffs, filed a "Class Action

Complaint for Declaratory Judgment and Injunctive Relief" in the United States District Court for the Northern District of Mississippi. Doc. #1. The four individual plaintiffs are (1) Antonio Riley, who is a "Black citizen of the United States and Mississippi, … a registered voter who has lived in Attala County for more than a year, is older than 21, and is otherwise qualified to serve as a juror in Attala County pursuant to Miss. Code Ann. § 13-5-1," *id*. at 5; (2) Sharon N. Young, who is a "Black citizen of the United States and Mississippi, … a registered voter who has lived in Grenada County for more than a year, is older than 21, and is otherwise qualified to serve as a juror in Grenada County pursuant to Miss. Code Ann. § 13-5-1," *id.* at 6; (3) Charles Hampton, who is a "Black citizen of the United States and Mississippi, … a registered voter who has lived in Winston County for more than a year, is older than 21, and is otherwise qualified to serve as a juror in Winston County pursuant to Miss. Code Ann. § 13-5-1," *id.*; and (4) Ruth Robbins, a "Black citizen of the United States and Mississippi, … a registered voter who has lived in Winston County for more than a year, is older than 21, and is otherwise qualified to serve as a juror in Winston County pursuant to Miss. Code Ann. § 13-5-1," *id*. at 7.

As the sole defendant, the complaint names Doug Evans, the District Attorney for the Fifth Circuit Court District of Mississippi, which encompasses the counties of Attala, Carroll, Choctaw, Grenada, Montgomery, Webster, and Winston. *Id.* The complaint alleges that Evans maintains "a policy, custom, and/or usage of exercising peremptory challenges to strike prospective Black jurors because of their race, in violation of the Fourteenth Amendment to the United States Constitution." *Id*. at 21. The plaintiffs seek, among other things, a declaratory judgment that the policy violates the United States Constitution, and "a permanent injunction forbidding the Defendant and his agents, employees, and successors in office from maintaining a custom, usage, and/or policy of exercising peremptory challenges against prospective Black jurors because of

their race." *Id*. at 22.

On December 23, 2019, Evans filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for abstention. Doc. #8. The motion is fully briefed. Docs. #13, #17. On July 31, 2020, the Court heard oral arguments on the issue of abstention.[1] Doc. #20.

## II
## Analysis

In his motion to dismiss, Evans contends that this Court lacks subject matter jurisdiction over this case because the plaintiffs lack standing to assert the claims and because the claims are not ripe. Doc. #9 at 2. He also contends that even if the plaintiffs have standing and the case is ripe, this Court should abstain from hearing the case under the abstention doctrine established in *O'Shea v. Littleton*, 414 U.S. 488 (1974). *Id*. at 3. The plaintiffs argue that abstention under *O'Shea* in this case would be inappropriate because (1) it would be contrary to two controlling cases—*Carter v. Jury Commission of Greene County*, 396 U.S. 320 (1970), and *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners*, 622 F.2d 807 (5th Cir. 1980); (2) this case would not interrupt a state judicial proceeding and they do not have an adequate remedy under state law; (3) even if *O'Shea* barred their claim for an injunction, it does not bar the request for declaratory relief; and (4) abstention would be "inconsistent" with the enactment of 42 § 1983. Doc. #13 at 20–30.

Because this Court concludes below that *O'Shea* abstention is warranted, and because the

---

[1] On February 12, 2020, the plaintiffs filed a supplement to their response in opposition to the motion to dismiss requesting oral argument based only on their belief that "argument would aid the court in the resolution of Defendant's motion." Doc. #16 at 2. While the Court deemed oral argument appropriate on the issue of abstention, oral argument on the remaining issues would be neither necessary nor helpful because this case may be decided on the issue of abstention alone. *See* L.U. Civ. R. 7(b)(6) ("The court will decide motions without a hearing or oral argument unless otherwise ordered by the court on its own motion or, in its discretion, upon written request made by counsel in an easily discernible manner on the face of the motion or response."); *Hall v. Mut. of Omaha Ins. Co.*, No. 4:16-CV-160, 2018 WL 1440075, at *1–2 (N.D. Miss. Mar. 22, 2018) (denying oral argument as neither necessary nor helpful).

abstention questions may be decided before jurisdictional issues, the Court declines to address the jurisdictional arguments. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("Nor must a federal court decide whether the parties present an Article III case or controversy before abstaining under *Younger*."); *Disability Rights N.Y. v. New York*, 916 F.3d 129, 131 n.1 (2d Cir. 2019) ("As we affirm on [*O'Shea*] abstention grounds, we do not reach the issue of standing.").

## A. Abstention Based on Interference with State Proceedings

Ordinarily, "[f]ederal courts … have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quotation marks omitted). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception" to this rule. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The Supreme Court has recognized four principal categories of abstention: *Pullman*, *Burford*, *Younger*, and *Colorado River*." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018).

*Younger* abstention began in the case of *Younger v. Harris*, in which a California state court criminal defendant sought an injunction from the United States District Court for the Central District of California to enjoin enforcement of the state criminal statute under which he was being prosecuted. 401 U.S. 37, 41–43 (1971). The *Younger* court held that abstention was warranted based in part on "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer an irreparable injury if denied equitable relief." *Id.* at 43–44. The court noted that this rule is justified by twin concerns—to "prevent erosion of the role

4

of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted," and to uphold "the notion of 'comity,' that is, a proper respect for state functions." *Id*. at 44.

As clarified by the United States Supreme Court, *Younger* justifies abstention only when exercising jurisdiction would interfere with "ongoing state criminal prosecutions," "certain civil enforcement proceedings," or "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (cleaned up). "If state proceedings fit into one of these categories, a court appropriately considers before invoking *Younger* whether there is (1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (cleaned up).

While *Younger* justifies abstention only when there is an *ongoing* state criminal prosecution, the Supreme Court in *O'Shea* extended the principles of *Younger* to an action involving interference with *future* state criminal proceedings. In *O'Shea*, the plaintiffs, nineteen residents of Cairo, Illinois, challenged in the United States District Court for the Eastern District of Illinois an alleged pattern and practice in Cairo's court system under which judges would set bonds "without regard to the facts of a case or circumstances of an individual defendant;" impose higher sentences on non-white defendants; and require defendants "charged with violations of city ordinances which carry fines and possible jail penalties if the fine cannot be paid, to pay for a trial by jury." 414 U.S. at 490, 492. The complaint sought an injunction restraining such practices. *Id*. After the district court dismissed the claims for lack of jurisdiction, the Seventh Circuit reversed, and the plaintiffs appealed to the United States Supreme Court. *Id.* at 492–94. Justice Byron White, writing for a divided court, observed:

5

> [The plaintiffs] do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin any criminal prosecutions that might be brought under a challenged criminal law. In fact, respondents apparently contemplate that prosecutions will be brought under seemingly valid state laws. What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if respondents proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* … and related cases sought to prevent.
>
> A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable.

*Id*. at 500.  Justice White further remarked that "if any of the [plaintiffs] are ever prosecuted and face trial, or if they are illegally sentenced, there are available state and federal procedures which could provide relief from the wrongful conduct alleged."  *Id*. at 502.  Thus, the *O'Shea* court held that "[c]onsidering the availability of other avenues of relief open to respondents for the serious conduct they assert, and the abrasive and unmanageable intercession which the injunctive relief they seek would represent," abstention was required.  *Id*. at 504.

While *O'Shea* addressed the impact on state criminal proceedings, *O'Shea* abstention "[l]ike *Younger*, … has also been applied in certain civil contexts involving the operations of state courts."  *Disability Rights N.Y.*, 916 F.3d at 134.  For example, courts have invoked *O'Shea* abstention when plaintiffs have sought to require a state court to "take certain actions in … guardianship proceedings;"[2] modify the procedure for assigning judges;[3] require a state court to modify its notice and hearing procedures used to remove children from their homes in exigent

---

[2] *Disability Rights*, 916 F.3d at 132, 137.

[3] *Kaufman v. Kaye*, 466 F.3d 83, 87–88 (2d Cir. 2006).

circumstances;[4] and enjoin "the consolidation of unlawful detainer (tenant eviction) actions into hub courts."[5]

Two years after deciding *O'Shea*, the Supreme Court in *Rizzo v. Goode* considered the propriety of an injunction sought by citizens and an organization in the city of Philadelphia requiring city officials to create "a comprehensive program for improving the handling of citizen complaints alleging police misconduct." 423 U.S. 364 n.1, 365 (1976). The injunction issued by the United States District Court for the Eastern District of Pennsylvania, and affirmed by the Third Circuit, required the defendants to submit to the district court "for its approval a comprehensive program for improving the handling of citizen complaints alleging police misconduct in accordance with a comprehensive opinion" issued by the district court. *Id.* at 364–65 (internal quotation marks omitted).

On appeal, the Supreme Court, with Chief Justice William Rehnquist writing for a five-justice majority, held that the "principles of federalism" underlying *Younger and O'Shea* "have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local government …." *Id.* at 380. *Rizzo* further held that "[w]hen a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Id.* at 378–79 (quotation marks omitted). Thus, *Rizzo* concluded abstention was warranted because the requested "injunctive order … significantly revising the internal procedures of the [city] police department, was indisputably a sharp limitation

---

[4] *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 606, 613–14 (8th Cir. 2018).

[5] *Miles v. Wesley*, 801 F.3d 1060, 1061 (9th Cir. 2015).

on the department's latitude in the dispatch of its own internal affairs."  *Id*. at 379.

### B.  *Ciudadanos* **and** *Carter*

The plaintiffs argue that irrespective of *O'Shea*, the opinions in *Ciudadanos* and *Carter* "hold that federal courts 'have not merely the power, but also the duty, to remedy' discriminatory jury selection practices" and that "[b]oth cases demonstrate that abstention is inappropriate under the circumstances here."  Doc. #13 at 20.

*Carter*, a case decided by the Supreme Court four years before *O'Shea* and one year before *Younger* (and mentioned in neither), involved allegations by African American citizens of Greene County, Alabama, that various state and county officials "had effected a discriminatory exclusion of Negroes from grand and petit juries in [the] County—the Governor in his selection of the county jury commission, and the commissioners and judge in their arbitrary exclusion of Negroes."  396 U.S. at 321–22.  The complaint sought:

> (1) a declaration that qualified Negroes were systematically excluded from Greene County grand and petit juries, that the Alabama statutes governing jury selection were unconstitutional on their face and as applied, and that the jury commission was a deliberately segregated governmental agency; (2) a permanent injunction forbidding the systematic exclusion of Negroes from Greene County juries pursuant to the challenged statutes and requiring that all eligible Negroes be placed on the jury roll; and (3) an order vacating the appointments of the jury commissioners and compelling the Governor to select new members without racial discrimination.

*Id.* at 322.  The United States District Court for the Northern District of Alabama enjoined the jury commissioners and the clerk from excluding African Americans from the jury rolls and directed them to compile a constitutional jury roll.  *Id.* at 328. The district court also directed the commissioners and the clerk to file the revised jury list with the court along with a report stating how the list was compiled.  *Id*.  However, the district court denied the request to enjoin enforcement

of the Alabama statutes or to direct the appointment of African Americans to the jury commission.[6]
*Id*. On appeal, the Supreme Court affirmed the district court's decisions. *Id*. at 328–29. It is unclear whether the defendants raised an abstention argument before the Supreme Court. But at the outset of the analysis, the Supreme Court noted:

> This is the first case to reach the Court in which an attack upon alleged racial discrimination in choosing juries has been made by plaintiffs seeking affirmative relief, rather than by defendants challenging judgments of criminal conviction on the ground of systematic exclusion of Negroes from the grand juries that indicted them, the trial juries that found them guilty, or both. The District Court found no barrier to such a suit, and neither do we. Defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection. People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion. Surely there is no jurisdictional or procedural bar to an attack upon systematic jury discrimination by way of a civil suit such as the one brought here.

*Id*. at 329–30 (footnotes omitted).

In *Ciudadanos*, the Fifth Circuit considered a challenge by community organizations[7] to the implementation of a "key man" grand jury selection procedure[8] in the Texas counties of Hidalgo and Willacy. 622 F.2d at 810–11. The plaintiffs sought monetary, injunctive, and declaratory relief based on allegations that the implementation resulted in "a pattern and practice of systematic exclusion or underrepresentation" of Mexican Americans, women, young people, and poor people. *Id*. at 812. The United States District Court for the Southern District of Texas dismissed the claims on the ground that they presented no justiciable controversy and the plaintiffs appealed. *Id*. at 811.

On appeal, the defendants, citing numerous cases, including *O'Shea* and *Younger*, argued

---

[6] The district court found that the statutes were not facially unconstitutional. *Bokulich v. Jury Comm'n of Greene Cty.*, 298 F. Supp. 181, 192–93 (N.D. Ala. 1968).

[7] *Ciudadanos*, 622 F.2d at 812 n. 9.

[8] Under this procedure, "jury commissioners … select prospective grand jurors from the community at large." *Id*. at 810.

"that principles of equitable restraint … make it inappropriate for the federal courts to order injunctive relief in these cases." *Id*. at 830 n.49. The Fifth Circuit disagreed on the grounds that cases like *O'Shea* and *Younger* involved claims for relief which "would interfere with pending judicial proceedings in the state courts," whereas the relief requested by the *Ciudadanos* plaintiffs was "directed to a time prior to the initiation of any actual judicial proceedings." *Id*. The panel noted that compliance with the requested injunction could be "fully accomplished and evaluated before any actual proceedings are commenced before even the grand jury's consideration of any indictments." *Id*. The panel held that *Carter* "indicates that no such obstacle to federal injunctive relief exists [because t]he [*Carter*] Court succinctly and definitively rejected the notion that there were any barriers to injunctive relief in a civil suit such as that before it." *Id*. Certiorari was sought and denied. *Hidalgo Cty. Grand Jury Comm'rs v. Ciudadanos*, 450 U.S. 964 (1981).

Here, the plaintiffs argue that "[b]y reaffirming *Carter* following the decisions in *O'Shea* and *Younger*, *Ciudadanos Unidos* made clear that [*Carter*] remains binding law." Doc. #13 at 22. The Eleventh Circuit considered an identical argument in *Hall v. Valeska*, a case invoking *O'Shea* abstention based on a request for equitable relief regarding petit jury selection practices of a district attorney's office. 509 F. App'x 834, 835–36 (11th Cir. 2012). The Eleventh Circuit ultimately concluded that neither *Carter* nor *Ciudadanos* controlled the propriety of *O'Shea* abstention:

> Both *Carter* and *Ciudadanos* are distinguishable because they involved challenges to the alleged systematic and unilateral exclusion of racial groups from jury rolls by officials charged with the administration of the state's jury-selection laws. Plaintiffs, on the other hand, challenge the discretionary use of peremptory strikes during judicial proceedings—strikes which may be objected to, ruled on contemporaneously, and subjected to appellate review.

*Id*. at 836.

This Court finds *Hall*'s analysis of *Carter* and *Ciudadanos* persuasive and thus concludes

that neither case controls the outcome of the abstention analysis here.[9]  Contrary to the plaintiffs'

assertion, *Carter* did not hold that abstention is per se inapplicable to any claim for injunctive relief

related to jury selection in a state court.[10]  Rather, *Carter* found "no … procedural bar to an attack

upon systematic jury discrimination by way of a civil suit *such as the one brought here*."  396 U.S.

at 329–30 (emphasis added).  The limited nature of this holding was recognized by *Ciudadanos*,

which observed that *Carter* "rejected the notion that there were any barriers to injunctive relief in

a civil suit *such as that before it*."  622 F.2d at 830 n.49 (emphasis added).  The suit brought in

*Carter*, as described above, sought injunctive relief related to a state's *jury pool selection*

*procedures*.  396 U.S. at 321–23.  As explained by the *Ciudadanos* panel, such suits do not run

afoul of *O'Shea* or *Younger* because the requested relief "is directed to a time prior to the initiation

of any judicial proceedings," such that enforcement of the equitable relief would not interfere with

a state judicial proceeding.   622 F.2d at 830 n.4.

Simply put, this case is not a suit such as the ones in *Carter* or *Ciudadanos* involving a

challenge to a pre-judicial proceeding practice.  Instead, this suit, like the suit in *Hall*, seeks

injunctive relief aimed at the use of peremptory challenges *during judicial proceedings*.  This

distinction removes this case from the ambit of *Carter* and *Ciudadanos* so as to render them non-

dispositive on the discrete issues raised here.

### C.  Abstention Issue in this Case

The plaintiffs argue that "[e]ven if *Ciudadanos Unidos* had not been decided, *Younger*,

*O'Shea*, and *Middlesex County* [*Ethics Commission v. Garden State Bar Association*, 457 U.S.

---

[9] Although the plaintiffs in *Carter* named a state court judge as a defendant, it does not appear this was related in any way to judicial proceedings (as opposed to the formulation of jury rolls).  Even if it was, the issue was not considered or addressed by the Supreme Court.

[10] To the extent *Carter* could be read as creating such a per se rule, the holding would not have survived *O'Shea*, which requires an inquiry into the level of interference with the requested equitable relief.

423 (1982)] independently demonstrate that abstention is both unwarranted and impermissible in this case." Doc. #13 at 23. Specifically, the plaintiffs argue that under *Middlesex*, *Younger* abstention may be invoked only when (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. *Id*. The plaintiffs contend that *O'Shea*, as an extension of *Younger*, has the same general requirements but that "*O'Shea* extended *Younger* to circumstances where the federal action would cause the 'interruption of state proceedings' at a future time." *Id*. at 23 n.9. Thus, the plaintiffs argue that abstention would be inappropriate because the requested relief would not interrupt future judicial proceedings and because the plaintiffs do not have an adequate remedy at law. *Id*.

### 1. *Middlesex*, *Younger*, and *O'Shea*

In *Middlesex*, the Supreme Court considered the applicability of *Younger* abstention to a challenge to the constitutionality of attorney disciplinary rules which were the subject of a pending state disciplinary proceeding. 457 U.S. at 425. In framing the inquiry, the *Middlesex* court stated:

> The question in this case is threefold: *first*, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id*. at 432.

For years, the Fifth Circuit interpreted *Middlesex* as "set[ting] out a three-part test describing the circumstances under which abstention was advised." *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996); *accord Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004). However, in *Sprint Communications, Inc. v. Jacobs*, the Supreme Court clarified that

the three "conditions" mentioned in *Middlesex* and relied on by the plaintiffs here were "not dispositive [but] were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*."[11] 571 U.S. at 81 (emphasis added). Thus, while a court should consider the three factors before abstaining under *Younger*,[12] "it remains unclear how much weight [a court] should afford these 'additional factors' after *Sprint*." *Falco v. Justices of Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015).[13] What is clear, however, is that these factors have no role in an *O'Shea* inquiry.

Initially as framed, *Middlesex's* focus on ongoing proceedings is anathema to the circumstances under which *O'Shea* abstention would be invoked—when there are no ongoing proceedings to interrupt. More fundamentally, as explained above, *O'Shea* found abstention was required based on two considerations—the "unmanageable intercession" of the requested injunctive relief and "the availability of other avenues of relief open to respondents." 414 U.S. at 504. Consistent with this direction, courts considering *O'Shea* abstention have focused on the same two questions—whether the requested injunctive relief would impermissibly interfere with future state proceedings and whether the plaintiffs have available other avenues of relief. *See, e.g.*, *Disability Rights N.Y.*, 916 F.3d at 137 ("DRNY may still avail itself of the state courts to challenge the constitutionality of Article 17A proceedings."); *Ogala Sioux Tribe v. Fleming*, 904 F.3d 603, 613 (8th Cir. 2018) ("State courts are competent to adjudicate federal constitutional claims."). The second of these questions, which focuses on the general availability of relief, differs from the third

---

[11] Notwithstanding this directive, the Fifth Circuit, in a handful of post-*Sprint* cases, has appeared to utilize the *Middlesex* framework without clarifying that they are additional factors. *See, e.g.*, *Zadeh v. Robinson*, 928 F.3d 457, 472 (5th Cir. 2019); *Perez v. Texas Med. Bd.*, 556 F. App'x 341, 342 (5th Cir. 2014).

[12] *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192–93 (5th Cir. 2015).

[13] *But see Silver v. Court of Common Pleas of Allegheny Cty.*, 802 F. App'x 55, 59 (3d Cir. 2020) (stating, without analysis that "the *Middlesex* factors … are required for *Younger* abstention").

*Middlesex* factor which asks whether such relief is available in the *ongoing state court proceedings*.[14] Therefore, the Court finds the *Middlesex* factors inapplicable to the *O'Shea* inquiry. Rather, in accordance with *O'Shea*, the propriety of abstention must be evaluated based on the level of interference with future proceedings and the availability of other avenues of relief.

## 2. Avenues of available relief

As explained above, a plaintiff has an available avenue of relief under *O'Shea* when there "are available state and federal procedures which could provide relief from the wrongful conduct alleged."[15] 414 U.S. at 502; *see generally Gardner v. Luckey*, 500 F.2d 712, 715 (5th Cir. 1974) ("We emphasize, however, that they are not left without a remedy for constitutional wrongs, if any, done them by the Offices. They can challenge the legality of their custody via federal habeas corpus, subject, of course, to prior exhaustion of state remedies."). Although stated in the conjunctive, the availability requirement has been deemed satisfied so long as the relevant state courts are competent to adjudicate federal constitutional claims. *Ogala Sioux*, 904 F.3d at 613.

There is no question that "Mississippi courts exercise concurrent jurisdiction with their federal counterparts over § 1983 claims," *E. Miss. State Hosp. v. Callens*, 892 So. 2d 800, 812 (Miss. 2004), the statutory vehicle for asserting constitutional claims against state actors. Nor is there any dispute "that individual jurors subjected to racial exclusion have the legal right to bring suit on their own behalf." *Powers v. Ohio*, 499 U.S. 400, 414 (1991). Accordingly, the plaintiffs here have avenues of available relief to challenge any improper exclusion from a jury.

---

[14] This distinction undermines the plaintiffs' argument advanced in a footnote that "[b]oth *Pipkins* and *Hall* committed a basic error of law by ignoring the fact that abstention is only permissible where Plaintiffs have an adequate opportunity to press their constitutional challenge *in the underlying state proceedings*." Doc. #13 at 29 n.17 (emphasis added).

[15] In *O'Shea*, the court identified as available avenues of relief: "right to a substitution of judge or a change of venue," "review on direct appeal or on postconviction collateral review," disciplinary complaints against the judges, and federal habeas relief. 414 U.S. at 502.

### 3. Interference with future proceedings

When considering the possibility of interference, the question of "whether *O'Shea* abstention applies is heavily fact-dependent." *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015). However, abstention will ordinarily be appropriate when a plaintiff seeks to "control[] or prevent[] the occurrence of specific events that might take place in the course of future state [proceedings]." *See O'Shea*, 414 U.S. at 500.

Here, the plaintiffs seek two forms of relief: (1) a declaration "that the Defendant's custom, usage, and/or policy described in the complaint violate the Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution;" and (2) a "permanent injunction forbidding the Defendant and his agents, employees, and successors in office from maintaining a custom, usage, and/or policy of exercising peremptory challenges against prospective Black jurors because of their race." Doc. #1 at 22.

#### a. Injunctive Relief

Two district courts have considered the applicability of *O'Shea* abstention based on challenges to a district attorney's allegedly unconstitutional jury selection practices—*Hall* and *Pipkins v. Stewart*, No. 5:15-cv-2722, 2019 WL 1442218 (W.D. La. Apr. 1, 2019).

In *Hall*, the African American plaintiffs alleged that the district attorney presiding over their counties maintained a "pervasive and continuing practice of utilizing peremptory challenges to exclude African-Americans from jury service." *Hall v. Valeska*, 849 F. Supp. 2d 1332, 1335 (M.D. Ala. 2012). The plaintiffs sought, among other things, a declaration that the use of peremptory strikes and other allegedly constitutional practices violated "the constitution, a federal statute, and state laws," and a permanent injunction prohibiting the defendants from engaging in the challenged practices. *Id.* The district court found that the requested relief would improperly

interfere with state criminal prosecutions because (1) the challenged practices "occur during the course of [a] criminal trial" and could lead to direct challenges by the defendant regarding jury selection; (2) the relief sought "could … allow any member of the [proposed] class subjected to a peremptory strike to promptly seek a contempt citation in federal court, so that resort to the federal courts by beneficiaries of the injunction to enforce the injunction would interrupt that process; (3) "a beneficiary of the injunction could … seek to enforce a federal injunction against a state judge denying a *Batson* challenge in a criminal case;" and (4) "[a] ruling by th[e] court, even after the completion of the criminal case, which was contrary to the state court judge's ruling on a *Batson* challenge could also have implications for the state court criminal conviction." *Id*. at 1338–39.

On appeal, the Eleventh Circuit affirmed the district court's invocation of *O'Shea* abstention. 509 F. App'x at 836. The Eleventh Circuit noted that "[l]ike the plaintiffs in *O'Shea*, [the plaintiffs] seek an injunction to control conduct that might occur in future state criminal trials." *Id*. It further observed that "as in *O'Shea* … federal intervention would be required each time a member of [the] proposed class alleged a violation of the injunction." *Id*. Ultimately, the court rejected the plaintiffs' contention that "because individual jurors are not parties to the criminal proceeding from which they are excluded, enforcement of the injunction would not interfere with individual state criminal cases," reasoning that "[e]ven if that proposition is true, enforcement of the injunction might—as plaintiffs themselves suggest—involve holding [the district attorney] in contempt." *Id*. The plaintiffs filed a petition for rehearing and rehearing en banc, which was denied without an en banc poll. *Hall v. Valeska*, No. 12-12267 (11th Cir. Mar. 18, 2013). Certiorari was not sought.

In *Pipkins*, the plaintiffs sought, among other forms of relief: (1) "a declaratory judgment that the District Attorney has employed, and continues to employ, a custom, usage, and/or policy

to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white;" and (2) a variety of injunctive relief, including "a permanent injunction forbidding the District Attorney to employ a custom, usage, and/or policy to exercise peremptory challenges against African-American citizens because of their race, in order to empanel criminal trial juries that are predominantly white." 2019 WL 1442218, at *6. The *Pipkins* court held that "[i]nherent" in the requested injunction "is the ability of African-American potential jurors in criminal trials who are subjected to a District Attorney's peremptory challenge to seek federal review before the Court." *Id.* at *10. Accordingly, the district court dismissed the plaintiffs' claims for injunctive relief.[16] *Id.* at *16.

Notwithstanding the *Pipkins* and *Hall* decisions, the plaintiffs in this case argue that their requested injunctive relief would not disrupt state proceedings because (1) jurors are not parties to state court criminal proceedings, so if "Evans strikes them with a peremptory challenge, they will leave the courtroom, and the trial will proceed uninterrupted;" (2) prospective jurors do not have a right to sit on a specific jury so "they cannot request that this Court halt jury selection and order … reinstatement;" (3) the requested injunction relates only to a "policy, custom, or usage" of peremptory strikes so "[r]eviewing and reversing individual jury selection decisions is neither necessary nor appropriate to the enforcement of such an injunction;" and (4) the plaintiffs have not named state judges as defendants so "enforcement of the injunction would not require this Court to review the decisions of state court judges." Doc. #13 at 26. Thus, the plaintiffs contend:

> If this Court agreed with Plaintiffs' allegations and enjoined Mr. Evans from continuing his policy, custom, and/or usage of discriminating against Black jurors, enforcement of that injunction would likely occur as follows: Plaintiffs, acting through counsel, would file a motion with this Court seeking relief. Plaintiffs would present evidence that Mr. Evans' office continued to systematically strike Black jurors in contravention of this Court's order. If this Court found that Plaintiffs'

---

[16] Claims for nominal damages were allowed to proceed. *Pipkins*, 2019 WL 1442218, at *16.

> contentions were correct, Plaintiffs would seek censure, contempt, or some other graduated sanction against Mr. Evans. They would not seek to interrupt any court proceeding. Consequently, the concerns that made abstention appropriate in *O'Shea* would be entirely absent. And Mr. Evans' office could ensure that no enforcement actions ever arise simply by following its constitutional obligation to select juries without regard to the race of the prospective jurors.

*Id*. at 27. During oral argument, the plaintiffs clarified that they do not foresee individual class members attempting to enforce an injunction after being stricken from a jury. Rather, they argued that after a period of "six months … or a year," they "would attempt to establish that the same pattern and practice that existed before the injunction had persisted after the injunction."

As an initial matter, while it is true that the defendant could avoid enforcements actions by complying with a possible injunction, the focus of *O'Shea* is "on the likely result of an attempt to enforce an order of the nature sought." *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992). And, even under the biannual or annual enforcement procedure articulated at oral argument, the likely result of attempts to enforce the requested injunction is substantial interference with state criminal proceedings.

First, to have any meaning, an order of this Court must be enforceable. *See Rodriguez v. Swank*, 496 F.2d 1110, 1112–13 (7th Cir. 1974) ("The power to order compliance with federal regulations would be meaningless if the injunction were unenforceable."). "The proper method to enforce an injunction is through the power of contempt." *Dominguez-Perez v. Chertoff*, 294 F. App'x 981, 983 (5th Cir. 2008) (internal quotation marks omitted) (collecting cases); *see Musselman v. Blue Cross & Blue Shield of Ala.*, 684 F. App'x 824, 831 (11th Cir. 2017) (Tjoflat, J., concurring) (referring to "[t]he longstanding doctrinal requirement of enforcing injunctions through contempt proceedings"). However, as recognized by *Hall*, the exercise of contempt power against a district attorney on matters related to jury selection would "raise concerns under *O'Shea* and *Younger*." 509 F. App'x at 836; *see Fleming*, 904 F.3d at 612 (abstention warranted where

"failure to comply with the district court's injunction would subject state officials to potential sanctions for contempt of court").

While *Hall* did not enumerate the specific concerns underlying the exercise of contempt against a district attorney, this Court finds that any attempts at enforcement of the contempt order (or similar relief) would likely involve substantial court involvement with the district attorney's strategies (including potential work product) and practices regarding jury selection. Such oversight would offend the notions of comity and federalism recognized by *Rizzo* by placing "a sharp limitation on the department's latitude in the dispatch of its own internal affairs." 423 U.S. at 379 (quotation marks omitted); *see Brown*, 908 F.3d at 1074 ("While the district court's order … does not map exactly on the orders in *O'Shea* and *Rizzo*, it would … impose a significant limit on the state courts and their clerk in managing the state courts' own affairs.").

Recognizing the potential enforcement concerns, the plaintiffs at oral argument suggested that the Court would not have to use contempt as a remedy and instead could "tighten the injunction or limit [Evans'] injunction or do something else." However, this suggestion begs the question: what if Evans failed to comply with the modified injunctive order or the limits on his discretion? Certainly, this Court could modify the injunction further but without a means to enforce such a modification, such orders would be paper and nothing more. Because "[i]t is not the practice of the Court … to issue injunctions for which it has no intent or means to enforce," the enforcement issues weigh strongly in favor of abstention. *Pipkins*, 2019 WL 1442218, at *10.

Furthermore, any petition for enforcement would, as the plaintiffs point out, require a showing that the district attorney's office was engaging in a policy or custom of excluding jurors based on race. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."). While

the plaintiffs contend that any such showing could be made solely through statistical evidence so as to preclude individual review of state court decisions, this is simply not the case.

It is true that Supreme Court precedent allows a criminal defendant raising a *Batson* challenge to introduce "statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in *the case*" to show "that a prosecutor's peremptory strikes were made on the basis of race." *See Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019) (emphasis added). Put differently, a statistical analysis of the use of peremptory strikes by a district attorney's office *in a particular case* may be used to prove discriminatory intent of the prosecutors *in that case*. However, this Court is aware of no authority which extends this doctrine to proving a custom or policy of racially discriminatory jury selection across an entire district attorney's office. Indeed, in the *Batson* context, the existence of a policy or custom is a distinct inquiry from the use of statistics. *See Miller-El v. Dretke*, 545 U.S. 231, 253 (considering both statistics and existence of policy or practice).

Even if statistics across cases and prosecutors were relevant to the ultimate issue of a policy or custom, it is unlikely they would be sufficient standing alone for this purpose. Courts are reluctant to extrapolate a department-wide custom or policy based on statistical evidence alone. *See, e.g.*, *Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 663–64 (D.N.J. 2015) ("[I]n general statistical evidence alone, isolated and without further context … may not justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers.") (quotation marks omitted); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) ("Statistics may be relevant, but there are no numerical standards controlling the determination whether incidents of wrongful behavior cumulatively show a pattern amounting to a custom or policy.") (cleaned up). Such evidence would seem particularly insufficient, in the

context of *Batson* challenges, for which the Supreme Court has held that statistical evidence is less "powerful" than "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve." *Miller-El v. Dretke*, 545 U.S. at 241.

Thus, even if the plaintiffs could rely exclusively on statistical evidence, the defendants would be able to challenge the plaintiffs' statistical evidence with case-by-case evidence. Under such circumstances, the policy or custom inquiry would necessarily require a review of numerous instances of allegedly improper juror exclusions to determine whether a custom or policy exists. *See Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."). And if such exclusions were allowed by the state court, any petition for enforcement could require this Court to hold such rulings were error, improperly calling into question the validity of any number of criminal proceedings which may be mid-trial, on appeal, or undergoing post-conviction review.[17] Each defendant in these proceedings, whether already convicted or in the middle of a trial, would be able to argue that a federal court had already determined that a juror was improperly stricken in violation of the Equal Protection Clause, thus requiring reversal. *See Berry v. State*, 703 So. 2d 269, 295 (Miss. 1997) ("If the lower court finds discrimination, then a new trial is ordered."). This finding, "[e]ven if not determinative in every instance," would undoubtedly impact state proceedings, *E.T. v. George*, 681 F. Supp. 2d 1151, 1172 (E.D. Cal. 2010), and is the type of plenary review of state court proceedings *O'Shea* strove to avoid. *See*

---

[17] The plaintiffs contend that the impact of any such ruling would be minimal because "few, if any, individuals exist" who would be able to invoke this Court's holding as grounds for challenging a jury selection procedure and because "[a]ny defendant seeking relief still must prove that their trial prosecutor struck a specific juror 'for a discriminatory purpose.'" Doc. #13 at 30. First, as explained above, a finding of a pattern or practice would involve an inquiry into specific circumstances of allegedly improper peremptory challenges. This inquiry would necessitate specific determinations as to the propriety of individual challenges. Furthermore, the plaintiffs offer nothing to support their conclusory assertion that few defendants would be able to invoke such determinations.

*E.T. v. Cantil-Sakuye*, 682 F.3d 1121, 1124 (9th Cir. 2012) (abstention appropriate when "potential remediation might involve [an ongoing] examination of the administration of a substantial number of individual cases").

In sum, the plaintiffs seek an injunction preventing the occurrence of specific events during criminal proceedings. Because the requested injunctive relief would place the Court in the position of holding a district attorney's office in contempt during (or after) criminal proceedings and would require the Court to independently review specific decisions by state courts, abstention is required.

### b. Declaratory Relief

Finally, the plaintiffs argue that even if abstention is warranted on the claim for injunctive relief, declaratory relief would still be proper. Doc. #13 at 30–31. In some circumstances, a declaratory judgment may be appropriate even when injunctive relief is not. *Steffel v. Thompson*, 415 U.S. 452, 466–67. However, in the abstention context, "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). This is because the declaratory relief "might serve as the basis for a subsequent injunction" and "even if [it] is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id*. Accordingly, where *O'Shea* requires abstention from a claim for injunctive relief, abstention from a related declaratory judgment claim is also appropriate. *Disability Rights N.Y.*, 916 F.3d at 137.

Here, the plaintiffs' request for declaratory relief mirrors the requested injunction insofar as it requires a finding of a pattern or practice of striking African American jurors because of their race. Abstention is required on this claim for the reasons set forth above.

**IV**
**Conclusion**

African Americans "won the right to serve on juries through the Fourteenth Amendment in 1868 and the Civil Rights Act of 1875."[18]  This right guarantees that a person will not be excluded from a petit jury on account of race.[19]  This Court's ruling today is in no way intended to undermine this longstanding and crucial right.  Nor is this decision intended to suggest that there is no merit to the plaintiffs' claims in this case.  Indeed, the opposite seems to be true.[20]  Rather, this Court simply concludes that abstention is required because the relief requested by the plaintiffs would result in an ongoing audit of state criminal proceedings.  Accordingly, the motion to dismiss [8] is **GRANTED**.[21]  A final judgment will issue separately.

    **SO ORDERED**, this 4th day of September, 2020.

                                          /s/Debra M. Brown
                                          **UNITED STATES DISTRICT JUDGE**

---

[18] *Ramos v. Louisiana*, 140 S. Ct. 1390, 1417 (2020) (Kavanaugh, J., concurring in part) (collecting cases).

[19] *Powers*, 499 U.S. at 409.

[20] *See Flowers*, 139 S. Ct. at 2245–46.

[21] In reaching this conclusion, the Court notes that "[t]he demands of federalism are diminished … and the importance of preventing friction is reduced, when state and federal actors are already engaged in litigation."  *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 140 S. Ct. 2412 (2020).  An action brought by the United States Department of Justice, therefore, likely would not require abstention.